READ *v.* PATTERSON *et al.*

(*Supreme Court, General Term, First Department.* January 24, 1890.)

1. DESCENT AND DISTRIBUTION—LIABILITY OF HEIRS.
   As, under the statutes of New York, a decedent's creditor cannot recover against the heirs for the debt, unless the personalty was insufficient, at the time of granting letters testamentary, to liquidate the debts, a decedent's creditor, pursuing the heirs, must show what the debts and personalty amounted to at that time.

2. EXECUTORS AND ADMINISTRATORS—ASSETS—EVIDENCE.
   The value of a decedent's personalty at the time of granting letters testamentary cannot be shown by the price it was sold for, years afterwards, by the executor.
   VAN BRUNT, P. J., dissenting.

Appeal from special term, New York county.

Action by Cassius H. Read against Elizabeth Patterson and others, heirs of John H. McCunn, deceased, on a debt due plaintiff from decedent. Judgment for plaintiff, and defendants appeal.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Preston Stevenson*, for appellants.    *Geo. Putnam Smith*, for respondent.

BRADY, J. · The plaintiff failed to show on the first trial of the issues herein that the deceased, John H. McCunn, did not leave an amount of personal assets sufficient to pay his debts; and Justice DANIELS, who expressed the views.

of the court sitting at general term,[1] said it might be, on another trial, that such explanations would be given by way of evidence as would prove the fact to be that the personal assets were not sufficient to pay the debts, and thus establish the right of the plaintiff to recover. The record on the second appeal, the defendants again being the appellants, is voluminous, and without an index, which has rendered its examination more laborious. The appellants' brief is also elaborate, their counsel discussing again a question of the statute of limitation which was decided against him on the former appeal, and in the hope of a reconsideration of it by this court. Indeed, all the objections, he concedes, were decided against his views save the first, namely, that the complaint and proofs fail to show the statutory prerequisites for a recovery against heirs at law for the debts of a decedent, but, on the other hand, show affirmatively that there can be no proof made of what the statute demands to sustain such an effort. The proceedings to charge the heirs under the provisions of the Revised Statutes bearing upon the subject, and which govern herein, are complex in their application and requirements; and the burdens, in the present state of their exposition, force, and meaning, which are cast upon the creditor, make it very difficult, if not impossible, to comply with their demands. The record here is replete in detail, and yet, considered abstractly with reference to these demands, it would seem to be deficient in many respects.

The two factors which present themselves at once, and most formidably, are the amount of the debts ·due by the decedent, and the value of the personal assets left for their payment. How is either of these controlling facts to be established,—inferentially or absolutely, presumptively or by proof positive? This meets us at the very threshold of the subject, and awakens obstacles and difficulties. The proceeding itself is one for which the common law made no formula; and the statute, therefore, as interpreted, must be strictly followed. Starting with this rule in view, there would seem to be little doubt that upon the plaintiff lies the duty of proving all the debts for which the decedent was responsible, and which in many cases must be a herculean task, overwhelming by its attendant expense and labor the whole claim involved, and as well to prove the whole of the personal estate and its value. The inventories bind neither plaintiff nor defendant, and the heirs are therefore surrounded by a wall which can be pierced only by details managed by a master hand. These observations,—which might well be extended, for the subject is prolific—are indulged in only to suggest a condition of legal exactions which yield the amplest protection to the heir, but a minimum to the creditor. The true rule would be to intrench the creditor behind the inventory of personal estate made or required by law, and the reported debts of the decedent, made by his administrator or executor, with the right to assail either or both for his greater advantage and success, and to impose upon the heirs the duty of showing their incorrectness. The heirs are the recipient of the testator's property, which goes to them with the contingent burden of their testator's debts; and the property which is thus incumbered they should protect by diligently watching the appropriation of the personal estate. If these conditions existed, the heir would exercise the power of securing his estate, and his efforts would be beneficial alike to the creditors and himself. In this case, for example, taking the amount of personal estate as it existed when Gano, the acting executor, passed his accounts before Surrogate ROLLINS, and its value as set forth, there was a very decided excess of personal property over the debts reported, assuming the whole amount of them, admitted and doubtful, not passed upon, or disputed to be correct. The personal property and its increase, according to the findings of the learned justice whose judg-

[1] See note at end of opinion.

ment we are asked to review, has, in the value of the leaseholds, fallen off $47,150, and thus, perhaps, jeopardized the inheritance of the heirs; a falling off evidently the result, as charged, of careless maladministration, or negligence of the executors. If the heirs had given proper attention to their interests, this result would no doubt have been prevented, and this litigation averted, by the payment of the testator's just debts. When the former appeal was before us, the personal estate appeared to be more than sufficient in value to pay the debts alleged, assuming them all to be justly due, which could not in fact be held to be correct; and these figures are still to prevail, on the principles and rules then declared to be controlling of the rights of the parties to this controversy, for it was then said that the amount and value of the personal estate related back to the time it was received by the executors. This rule is just, inasmuch as it calls for diligence in the sale or appropriation of such property, with a view to the payment of debts, and to prevent waste, a calamity which seems to have overwhelmed the leasehold, which was sold years afterwards for the sum $6,850, and by which there was an enormous decrease, apparently, in its value, put down, as we have seen, at the sum of $93,465.45, in the executor Gano's account, and increased by further appraisement to $123,439.12. The amount of this sale is the chief item by which the heirs are sought to be made responsible for the testator's debts; and its existence, as a fact, occurred, as suggested, years after the executors received the personal property. Who should bear the burden of the deficit thus caused? The creditor cannot pursue the heirs under the Revised Statutes until the deficiency of assets has been developed, and, under the provisions of the Code, until three years have elapsed since the granting of letters testamentary, (section 1844;) but the heirs could have protected themselves, by diligent attention to their interests, against the creditors whose claims might affect their inheritance. And, again, the creditors might, by proper diligence, have urged and enforced payment of their debts by proper and prompt proceedings in the surrogate's court, which they seem to have overlooked or disregarded; and hence the equities would seem to be nearly balanced.

However this may be, applying the rule stated on the former appeal, the evidence now submitted has not changed the result. The sale of the leasehold, years after the executors received the personal property in which it was included, cannot have the force necessary to overcome the asserted value of the leasehold property, of which the account, under section 1848 of the Code, furnishes presumptive evidence. It is only proof of the value at the time of the sale, not of the value at the time the executors received it. The plaintiff has therefore failed to prove the necessary facts to justify the findings made herein, and the judgment must therefore be reversed. He is the moving party. He asserts a condition of the estate of the testator, both as to indebtedness and extent of personal property, existing at the time the estate passed into the possession of the executors,—factors the presence of which were necessary, as he was duly advised when the former appeal was decided. He has not made them apparent, in such relation, as to entitle himself to the relief asked against the heirs. He has not, in other words, shown the extent and value of the personal estate at the time when it passed to the executors, and the debts then due. He placed his right to recover chiefly upon the amount of the sale of the leasehold, which was made years subsequently; and the result of that sale, as suggested, cannot be employed for his benefit. It may be said, in conclusion, that the record differs only in unimportant particulars, so far as the plaintiffs' rights are sought to be sustained, from the previous one, in which the questions involved were duly considered and disposed of. See opinion, DANIELS, J., printed in the record.[1] For these reasons the judg-

---

[1] See note at end of opinion.

ment must be reversed, and a new trial granted, with costs to the appellants to abide the event.

DANIELS, J., concurs.　VAN BRUNT, P. J., dissents.

### NOTE BY THE EDITOR.

The opinion delivered of the former appeal was filed March 28, 1888, and is as follows:

"DANIELS, J. The plaintiff was a creditor of John H. McCunn, who died in July, 1872. He was also the assignee of four other demands, besides his own, existing against the testator at the time of his decease. Three of these demands had passed into judgment in actions against the executors named in the testator's will, and to whom letters testamentary were issued in December, 1872. These judgments were assigned to the plaintiff; but, as the assignments did not in terms include the demands or causes of actions upon which the judgments were recovered, it has been objected that he obtained no title to those demands. But this objection is unfounded, for the rule has long been settled that the assignment of a judgment carries with it the debt upon which it has been recovered. Bolen v. Crosby, 49 N. Y. 183, 187. Neither of the judgments, nor the two demands which did not pass into judgment, was paid by the executors; and this action was commenced on the 17th of February, 1882, more than three years after their appointment and the issuing of letters to the executors, to charge these debts upon the real estate of the testator, which had been inherited by descent by his heirs. It was commenced and prosecuted under the provisions of the Code of Civil Procedure, which, in at least one material respect, has changed the law from the condition in which it stood as a part of the Revised Statutes made applicable to actions against heirs and devisees. When this suit was commenced, and until after issue was joined in it, Jane McDonald, who was one of the heirs at law with the testator, was made a defendant in it; and a defense presented in her favor was that the demands had been barred by the statute of limitations previous to the time of commencement of this suit. But six years had not elapsed after either of the demands had accrued and become due before the decease of the testator; and the statute of limitations, for this reason, had not run in his favor, at the time of his decease, against either of these debts. The defendant Jane McDonald was not a resident of this state at the time of his decease, nor at any time afterwards, to the time of her own decease, and because of that fact the statute of limitations did not run in her favor, and she was not entitled to rely upon it as a defense because of the lapse of time intervening between the decease of the testator, and the issuing of the letters testamentary, and the commencement of this suit. The law upon this subject is the same whether the enactment, as it is contained in the Revised Statutes, is followed and applied, or its enactment afterwards in the Code of Civil Procedure; for by the former law it was declared, when the cause of action shall accrue against a person who shall be out of the state, such action may be commenced, within the terms limited by the statute, after the return of such person into this state. 3 Rev. St. (6th Ed.) p. 478, § 100; Code Civil Proc. § 401. And this, by subdivision 3 of section 414, appears to be made applicable to this action, for it was commenced more than two years after the enactment of this part of the Code, and it had gone into effect. The evidence given to prove the existence of the five demands set forth in the complaint was obtained from James M. Gano, who was one of the persons appointed as executor of the testator's estate, and to whom letters testamentary were issued. His evidence concerning the existence of the demands, and the liability of the estate for their payment, was objected to on the ground that he was incompetent to give it, under section 829 of the Code of Civil Procedure. The objection was overruled, and the appellants, who, as trustees, succeeded under her will to the property of Jane McDonald, excepted to the decisions of the court permitting the witness so to testify. The ground now taken in support of this exception is that this witness was interested in the event of the action, and for that reason incompetent to give this evidence. It was charged in the course of the trial, and that position has been taken to support the appeal, that the estate of the testator was mismanaged, and his property misappropriated, by his executors, and that the witness, in the event of recovery by the plaintiff in this action, would protect himself against legal liability to account for that management. But this result would not follow; for, if he had been guilty of this misconduct, the result of this suit would not relieve him from liability. Besides that, at the time when his testimony was given the statute of limitations seems to have run in favor of the witness against such a cause of action; and, in addition to that, he had accounted before the surrogate, and been discharged by his decree, in April, 1885, more than a year before the commencement of the trial of this action. And these appellants, previous to the decree, and after the report made by the auditor upon the accounting of this executor, applied for leave to become parties to the proceeding, and to resist the settlement of the accounts of this executor, and his discharge from liability, but that application was denied by the surrogate. As the evidence was given, also, there was no legal ground for supposing that this executor could be made liable for any mismanagement or misappropriation of the property of the estate; for, so far as that was done, it appears to have been by the mis-

conduct of the widow, who was one of the executors, and since deceased, and by Thomas McCunn, a brother of the testator, who is out of the country. They took charge of the estate, and obtained possession of the misappropriated property, by excluding this executor from his preceding management and control; and for their conduct commenced and followed by this usurpation he would not be liable. There was no reason, accordingly, for rejecting his evidence offered upon the trial of the action in support of the plaintiff's demands. An examination of his testimony satisfactorily sustains the conclusion that it was sufficient, as it was not in conflict with the testimony of any other witness, although not entirely in harmony with his own preceding statement, to sustain each of these demands, and to the extent, also, to which they were allowed by the justice presiding at the trial. The contracts made by the heirs with Christopher Fine, under which he acted in their behalf, to set aside the devise of the testator's real estate as unlawfully made, would have had no effect whatever over the disposition of the action if they had been received in evidence, instead of having been rejected, as that was done, by the court; for the demands assigned by him accrued in his favor against the testator himself, and nothing was inserted in either of the contracts inconsistent with his right to recover such demands. And, having such right, it was entirely competent for him to transfer the demands by assignment to the plaintiff.

"The more immediate and serious obstacle in the way of the right of the plaintiff to maintain the action upon either one of these demands arises out of the condition of the estate of the testator at the time of his decease, and when the letters testamentary were issued; for, while the action has been prosecuted under the provisions of the Code of Civil Procedure, and it was made to appear on the trial, and the facts were so found by the court, or that the plaintiff had been and would be unable, with due diligence, to collect his debts by his proceedings in the proper surrogate's court, or by action against the executors, legatees or next of kin, this was not sufficient to entitle the plaintiff to recover, for the causes of action accrued, if they existed at all, before this part of the Code of Civil Procedure went into effect. And, while it could properly be enforced by following the form of action prescribed for this purpose by the Code, the right itself depended upon the provisions of the preceding statute. If a right of action had not accrued under those provisions, then the plaintiff was not entitled to recover, and the judgment in his favor must be held to be erroneous. The Code, by section 3352, has recognized both the soundness and the application of the construction; for it has declared that the provisions relating to this class of cases, as they are contained in chapter 15 of the Code of Civil Procedure, were not rendered ineffectual, or otherwise impaired any defense or limitation lawfully accrued or established before the provisions in question took effect, unless the contrary is expressly declared, but, 'as far as it may be necessary for the purpose of avoiding such a result, or carrying into effect such a proceeding or other act, or enforcing or protecting such a right, defense, or limitation, the statutes in force on the day before the provision takes effect are deemed to remain in force notwithstanding the appeal thereof.', If, under this general provision, the heir, whose rights are represented by the appellants, was not liable to the action, or had acquired and become vested with a legal defense to it under the preceding statute, she and they were as fully protected as though the law relating to this class of cases had in no manner been changed, as they have been by section 1848 of the Code of Civil Procedure. They have insisted, by way of defense, that she did not become liable to this action for the reason that the personal assets of this estate which were left by the testator, and passed into the hands of his executors, were more than sufficient to pay the debts for which the action has been brought, as well as all other debts owing by the testator. The law, before the enactment of this part of the Code of Civil Procedure, declared the heirs of a deceased person to be liable for his debts, to the extent of his estate descending to them, only when the deceased left no personal assets within this state to be administered, or his personal assets were not sufficient to pay and discharge the debt, or that after proceedings before the proper surrogate's court, and at law, the creditor had been unable to collect his debt, or some part thereof, from the personal representatives of the deceased, or from his next of kin or legatees. In case the personal assets were sufficient to pay a part of the debt, then the heirs of the deceased person were made liable for only so much as remained unpaid or uncollected. 3 Rev. St. (6th Ed.) p. 736, §§ 32-34. In Blossom v. Hatfield, 24 Hun, 275, the action was sustained for the reason that the personal assets of the deceased were not sufficient to pay his debts, and it was therefore within the authority of these sections of the statute. But, where his personal assets are shown to be sufficient for the payment of his debts, there the action against his heirs cannot be maintained until after proceedings have been taken before the proper surrogate's court, or at law, for the collection of the debt, and the creditor has been unable to collect it, or some part of it. These sections of the statute refer to the condition or state of the personal assets of the deceased at the time of his own decease, or, at the latest, when they are taken in charge by his personal representative. It is as to that time that the statute speaks in prescribing the right of the creditor to maintain the action without proceeding either at law or before the surrogate's court; for it is as to the assets left by the deceased person that this statutory provision has been enacted, and it is only when he has left either no personal assets, or an insufficient amount to pay and discharge his debts, that the action against the heirs can be maintained under this part of the statute. The plaintiff alleged

this to be the condition of the testator's assets, but that was controverted by the answer of Mrs. McDonald; and it was under that answer the appellants resisted the enforcement of these demands against her property. If, therefore, the testator left sufficient personal assets to pay his debts at the time of his decease, or when his estate when into the hands of his executors, then this heir, whose rights and liabilities are represented by the appellants, was vested with a legal defense by this language of the statute; and that, according to section 3352 of the Code of Civil Procedure, has been preserved to her the same as though no change whatever had been made in this condition of the law. And that a sufficiency of personal estate for the payment of the testator's debts created such a defense follows, not only from the statute, but the construction and effect given to it in Selover v. Coe, 63 N. Y. 438. That the deceased testator did leave an amount of personal assets sufficient to pay his debts was proved with a reasonable degree of certainty, at least, by the evidence of this same witness. He testified in the first instance that the amount of the personal estate was $93,465.45, and upon a further inventory and appraisement of the personal estate it was reported to amount to $123,439.12. This included valuable leasehold interests which the testator acquired in his life-time, and upon which he had erected buildings; and these leases were legally included in the appraisement as portions of the personal estate of the deceased under subdivision 1, § 6, 3 Rev. St. (6th Ed.) 89. As to that no controversy has been made in this action. And by the same witness it was stated that the debts owing by the testator amounted to the sum of about seventy thousand dollars. That, he stated, he thought was the full amount of unpaid claims which had been proven before himself against the estate. Neither of these subjects was pursued with any degree of particularity by either of the counsel, but the case was left to depend upon these general statements. The inventories which were made by the witness as one of the executors, together with a report of the auditor, and the decree of the surrogate, were also produced upon the trial, and given in evidence. But by no construction which can be placed upon them does it appear that the debts owing by the deceased were incapable of being paid or satisfied out of his personal assets. By the account designated as Schedule B, it does appear that there were bad debts owing to the testator amounting to the sum of $3,309; and those are all bad debts that are shown in this schedule to have been debts owing to the testator himself. Others are stated, forming a very large part of this schedule; but they are demands accruing afterwards, according to their dates, and after the decease of the testator. The taxes mentioned as having been paid, and included in Schedule D, also appear to be incapable of being allowed, for the reason that they were not shown to have accrued during the life of the testator. If that fact has been proven, then their payment would be entitled to deduction from the personal assets, under the provision of the statute; for that has required taxes assessed upon the estate of the deceased, previous to his death, to be paid from his personal assets. 3 Rev. St. (6th Ed.) p. 95, § 37, subd. 2. These taxes are all charged as having been paid in the year 1875, and are neither of them shown to have been imposed upon the testator's property prior to his decease. It has been stated in Schedule G that there were taxes assessed against the testator and the estate to the probable amount, with interest, of twenty-five thousand dollars. But what part was assessed against him, and what against the estate after his decease, was not mentioned. Neither have any facts or *data* been given by which any definite part of this sum of money can be held to have been taxes owing by him. Claims are stated to have been paid amounting to the sum of $11,937.22; but whether these, or either of them, were against the deceased himself, has not been set forth or disclosed. And the fact that they were paid in the years 1873 and 1875 is a circumstance tending to support the view that they were against the executors themselves, after the estate had passed into their administration. The same is true as to rents paid upon the leases with the exception of inconsiderable amounts mentioned by the witness in the course of his examination; and, as to the expenditures contained after the first four items in Schedule C, they are stated to have been expenses in the care and management of the estate. These expenses formed no part of the debts owing by the testator; but they were payable out of the rents and income of the property while it was in the hands of the executors, and that the proof indicates to have been more than sufficient for this purpose. Making all the allowances which the inventories or schedules would appear to justify, and giving the executors the benefit of debts owing by the testator, and shown by Schedule H, and amounting to the sum of $70,971.73, there still appears to have been a surplus of the personal estate amounting to upwards of forty-nine thousand dollars; and if the ten thousand dollars taken by the widow out of the safe, upon her own unsupported statement that it had been given to her by the testator, should be added to this balance, then it will amount to the sum of fifty-nine thousand dollars, to be only further reduced by five thousand paid, under the direction of the will, upon the premises devised to her for life. It may be that such explanations will be given by way of evidence as will prove the fact to be that the personal assets were not sufficient to pay the debts of the testator, but that evidence was not elicited upon the trial of the action which was followed by the judgment now in controversy. The evidence, on the other hand, was that the personal assets greatly exceeded the debts owing by the testator; and they should have been applied by the executors to the payment of his debts, including those now in controversy, all of which, except the demand due under the contract made directly with the plaintiff, were included in this

sum of $70,971.73. Upon this branch of the case, the liability of the real estate inherited by Jane McDonald for payment of the testator's debts has not been established. But the fact, on the other hand, has been proved that the appellants, in her interest, were entitled to resist this action successfully under the provisions of the statute which have already been mentioned. Other points have been presented in support of the appeal, but they appear to be free from all ground of legal objection; but on this point these defendants and appellants were entitled to succeed in their defense. The judg ment should be reversed, and a new trial ordered, with costs to abide the event."